IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

NOV 2 3 2020

CLERK, U.S. DISTRICT COURT
By_____
Deputy

JUSTIN SCHRADER,                    §
                                    §
        Plaintiff,                  §
                                    §
VS.                                 §    NO. 4:20-CV-160-A
                                    §
TEXAS DEPARTMENT OF PUBLIC          §
SAFETY, ET AL.,                     §
                                    §
        Defendants.                 §

MEMORANDUM OPINION AND ORDER

Came on for consideration the motion of defendants Erath
County ("County"), Vanessa Griffin ("Griffin"), and Matt Coates
("Coates"), and the motion of defendant Julie Ruggles
("Ruggles"), for summary judgment. The court, having considered
the motions, the responses of plaintiff, Justin Schrader, the
reply of County, Coates, and Griffin, the record, and applicable
authorities, finds that the motions should be granted.

I.

Plaintiff's Claims

The operative pleading is plaintiff's second amended
complaint filed September 10, 2020. Doc.[1] 50. In it, plaintiff
alleges that his leg was broken on January 29, 2018, by a state
trooper who said he stopped plaintiff for racing and evading

---

[1] The "Doc. __" reference is to the number of the item on the docket in this action.

arrest. Id. ¶ 10-11. A County deputy took plaintiff to the jail, which sent him to the hospital before it would accept him. Id. ¶ 12. Plaintiff was jailed in the County jail with instructions from the emergency room doctor to keep his leg elevated, put no weight on it, keep it iced, and schedule surgery. Id. ¶¶ 14-15. Defendants knew of plaintiff's serious medical needs and were deliberately indifferent to them. Id. passim.

Plaintiff sues for violations of the Fourteenth Amendment. Id., 8-15. Specifically, he sues County for (1) episodic acts or omissions, (2) conditions of confinement, and (3) failure to train. He sues Coates and Griffin for failure to supervise. He sues Griffin and Ruggles for deliberate indifference.[2]

## II.

### Grounds of the Motions

Ruggles is a registered nurse who provided 30 hours of nursing services per week to inmates at County jail pursuant to a contract between her employer, Southern Health Partners, Inc. ("SHP"), and County. Ruggles was supervised by Laurie Srubar, FNP, who was the County jail medical provider. Ruggles maintains that plaintiff cannot establish that she had subjective

---

[2] He alternatively sues Ruggles under common law, but defendants do not contend that she was not a state actor.

knowledge of a substantial risk of serious harm to plaintiff but responded with deliberate indifference to that risk.[3] Doc. 59.

Coates is the Sheriff of County and is the policy-maker for its jail. Griffin is the jail administrator. County, Coates, and Griffin argue that plaintiff's constitutional rights were not violated by a policy, custom, or practice of County; neither Coates nor Griffin were deliberately indifferent to training or supervision of jailers; plaintiff's serious medical needs were never treated with deliberate indifference; and, even if plaintiff's constitutional rights were violated, Coates and Griffin are entitled to qualified immunity. Doc. 57.

### III.

### Applicable Legal Principles

A.   Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material

---

[3] Ruggles also argues that she is not liable in her official capacity, but plaintiff says that he did not sue Ruggles in her official capacity. Doc. 78, n.1.

fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u> at 323.

Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. <u>Id.</u> at 324; <u>see also</u> Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . .").[4] If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 597 (1986).

Although the court must resolve all factual inferences in favor of the nonmovant, the nonmovant cannot manufacture a disputed material fact where none exists. <u>Albertson v. T.J.</u>

---

[4] It is not the court's job to sift the record in search of evidence to support a party's opposition to a motion for summary judgment. <u>Ragas v. Tennessee Gas Pipeline Co.</u>, 136 F.3d 455, 458 (5th Cir. 1998).

Stevenson & Co., 749 F.2d 223, 228 (5th Cir. 1984). He cannot

defeat a motion for summary judgment by submitting an affidavit

that contradicts, without explanation, his earlier sworn

deposition. Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795,

806 (1999); S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489,

495 (5th Cir. 1996); Albertson, 749 F.2d at 228. Nor can he rely

on conclusory allegations unsupported by concrete and particular

facts. Duffy v. Leading Edge Prods., Inc., 44 F.3d 308, 312 (5th

Cir. 1995).

The mere existence of some alleged factual dispute between

the parties will not defeat an otherwise properly supported

motion for summary judgment. Anderson, 477 U.S. at 247-48.

Moreover, "[w]hen opposing parties tell two different stories,

one of which is blatantly contradicted by the record, so that no

reasonable jury could believe it, a court should not adopt that

version of the facts for purposes of ruling on a motion for

summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

B.   Entity and Supervisor Liability Under § 1983

The law is clearly established that the doctrine of

respondeat superior does not apply to § 1983 actions. Monell v.

New York City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978);

Williams v. Luna, 909 F.2d 121, 123 (5th Cir. 1990). The

misconduct of a subordinate must be affirmatively linked to the

action or inaction of the supervisor. Southard v. Tex. Bd. Of
Crim. Justice, 909 F.2d 121, 123 (5th Cir. 1990). A supervisor
may be liable under § 1983 only if he or she, by action or
inaction, demonstrates deliberate indifference to a plaintiff's
constitutionally protected rights. Id. at 551. The deliberate
indifference standard allows the court to separate omissions
that amount to an intentional choice from those that are merely
unintentionally negligent oversights. Id. (quotations and
citations omitted).

Liability may be imposed against a local government only if
the governmental body itself subjects a person to a deprivation
of rights or causes a person to be subjected to such
deprivation. Connick v. Thompson, 563 U.S. 51, 60 (2011). Local
governments are responsible only for their own illegal acts. Id.
(quoting Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986)). Thus,
plaintiffs who seek to impose liability on local governments
under § 1983 must prove that action pursuant to official policy
caused their injury. Monell, 436 U.S. at 691. Specifically,
there must be an affirmative link between the policy and the
particular constitutional violation alleged. City of Oklahoma
City v. Tuttle, 471 U.S. 808, 823 (1985).

Proof of a single incident of unconstitutional activity is
not sufficient to impose liability, unless proof of the incident

6

includes proof that it was caused by an existing,
unconstitutional policy, which policy can be attributed to a
governmental policymaker. Tuttle, 471 U.S. at 823-24. (If the
policy itself is not unconstitutional, considerably more proof
than a single incident will be necessary to establish both the
requisite fault and the causal connection between the policy and
the constitutional deprivations. Id. at 824.) Thus, to establish
governmental liability requires proof of three elements: a
policymaker, an official policy, and a violation of
constitutional rights whose moving force is the policy or
custom. Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th
Cir. 2001).

The Fifth Circuit has been explicit in its definition
of "official policy" that can lead to liability on the part
of a governmental entity, giving the following explanation
in an opinion issued en banc in response to a motion for
rehearing in Bennett v. City of Slidell:

> 1. A policy statement, ordinance, regulation or
> decision that is officially adopted and promulgated by
> the [entity's] lawmaking officers or by an official to
> whom the lawmakers have delegated policy-making
> authority; or
>
> 2. A persistent, widespread practice of [entity]
> officials or employees, which, although not authorized
> by officially adopted and promulgated policy, is so
> common and well settled as to constitute a custom that
> fairly represents [entity] policy. Actual or

7

constructive knowledge of such custom must be attributable to the governing body . . . or to an official to whom that body had delegated policy-making authority.

Actions of officers or employees of [an entity] do not render the [entity] liable under § 1983 unless they execute official policy as above defined.

735 F.2d 861, 862 (5th Cir. 1984)(per curiam).

Culpability for deprivation of rights is at its most tenuous where a claim turns on failure to train or supervise. Connick, 563 U.S. at 61. The failure to train or supervise must constitute deliberate indifference to the rights of persons with whom the untrained or unsupervised employees come into contact. And, to establish deliberate indifference for failure to train or supervise ordinarily requires the plaintiff to show a pattern of similar constitutional violations sufficient to give notice that the course of training or supervision is deficient in a particular respect. Id. at 62; Bowen v. Watkins, 669 F.2d 979, 988 (5th Cir. 1982) ("Usually, a failure to supervise gives rise to section 1983 liability only in those situations in which there is a history of widespread abuse.").

Neither a supervisory official nor a governmental entity can be held liable for failing to adopt policies to prevent constitutional violations. See, e.g., Vela v. White, 703 F.2d 147, 153 (5th Cir. 1983); Reimer v. Smith, 663 F.2d 1316, 1323

8

(5th Cir. 1981); Wanger v. Bonner, 621 F.2d 675, 680 (5th Cir. 1980).

C.   Qualified Immunity

Qualified immunity insulates a government official from civil damages liability when the official's actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). For a right to be "clearly established," that right's contours must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Individual liability thus turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law at the time. Hunter v. Bryant, 502 U.S. 224, 228 (1991); Anderson, 483 U.S. at 639-40. In Harlow, the court explained that a key question is "whether that law was clearly established at the time an action occurred," because "[i]f the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." 457 U.S. at 818. In assessing whether the law was clearly established at the time, the court is to consider all

9

relevant legal authority, whether cited by the parties or not. Elder v. Holloway, 510 U.S. 510, 512 (1994). If public officials of reasonable competence could differ on the lawfulness of defendant's actions, the defendant is entitled to qualified immunity. Mullenix v. Luna, 577 U.S. 7, 11 (2015); Malley v. Briggs, 475 U.S. 335, 341 (1986); Fraire, 957 F.2d at 1273.

In analyzing whether an individual defendant is entitled to qualified immunity, the court considers whether the plaintiff has alleged any violation of a clearly established right, and if so, whether the individual defendant's conduct was objectively reasonable. Siegert v. Gilley, 500 U.S. 226, 231 (1991); Duckett v. City of Cedar Park, 950 F.2d 272, 276-80 (5th Cir. 1992). In so doing, the court should not assume that the plaintiff has stated a claim, i.e., asserted a violation of a constitutional right. Siegert, 500 U.S. at 232. Rather, the court must be certain that, if the facts alleged by the plaintiff are true, a violation has clearly occurred. Connelly v. Comptroller, 876 F.2d 1209, 1212 (5th Cir. 1989). Even if defendants are alleged to have acted in unison, the court must address the actions of each individually to determine whether qualified immunity applies. Cass v. City of Abilene, 814 F.3d 721, 730-31 (5th Cir. 2016); Meadours v. Ermel, 483 F.3d 417, 421-22 (5th Cir. 2007); Stewart v. Murphy, 174 F.3d 530, 537 (5th Cir. 1999).

A mistake in judgment does not cause an officer to lose his qualified immunity defense. In <u>Hunter</u>, the Supreme Court explained:

> The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." <u>Malley</u>, [475 U.S.] at 343. . . . . This accommodation for reasonable error exists because "officials should not err always on the side of caution" because they fear being sued.

502 U.S. at 229. "[A]n allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." <u>Malley</u>, 475 U.S. at 341. Further, that the officer himself may have created the situation does not change the analysis. That he could have handled the situation better does not affect his entitlement to qualified immunity. <u>Young v. City of Killeen</u>, 775 F.2d 1349, 1352-53 (5th Cir. 1985).

When a defendant relies on qualified immunity, the burden is on the plaintiff to negate the defense. <u>Kovacic v. Villareal</u>, 628 F.3d 209, 211-12 (5th Cir. 2010); <u>Foster v. City of Lake Jackson</u>, 28 F.3d 426, 428 (5th Cir. 1994). The standard is demanding. <u>Vincent v. City of Sulphur</u>, 805 F.3d 543, 547 (5th Cir. 2015). Although Supreme Court precedent does not require a case directly on point, existing precedent must place the statutory or constitutional question beyond debate. <u>White v. Pauly</u>, 137 S. Ct. 548, 551 (2017). That is, the clearly

established law upon which the plaintiff relies should not be defined at a high level of generality, but must be particularized to the facts of the case. Id. at 552. Thus, failure to identify a case where an officer acting under similar circumstances was held to have violated a plaintiff's rights will most likely defeat the plaintiff's ability to overcome a qualified immunity defense. Id.; Surratt v. McClarin, 851 F.3d 389, 392 (5th Cir. 2017).

D.   Deliberate Indifference to Medical Needs

The Eighth Amendment proscribes cruel and unusual punishments, which the Supreme Court has interpreted to include deliberate indifference to serious medical needs of prisoners. Estelle v. Gamble, 429 U.S. 97, 104 (1976). A pretrial detainee's complaint of deliberate indifference to medical needs arises under the Fourteenth Amendment. Thompson v. Upshur Cnty., 245 F.3d 447, 457 (5th Cir. 2001).

A pretrial detainee's claims against a governmental entity are characterized as "conditions of confinement" or "episodic act or omission" claims. Garza v. City of Donna, 922 F.3d 626, 632 (5th Cir. 2019). In a conditions of confinement claim, the plaintiff attacks the general conditions, practices, rules or restrictions of pretrial confinement. Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997). To succeed on such a claim, the

12

plaintiff must prove (1) a rule or restriction, an intended
condition or practice, or a de facto policy as evidenced by
sufficiently extended or pervasive acts of jail officials, (2)
not reasonably related to a legitimate governmental objective,
i.e., arbitrary or purposeless, (3) that caused a violation of
his constitutional rights. Duvall v. Dallas Cnty., 631 F.3d 203,
207 (5th Cir. 2011). He must demonstrate a pervasive pattern of
serious deficiencies in providing for his basic human needs. As
the Fifth Circuit has noted:

> [I]solated examples of illness, injury, or even death,
> standing alone, cannot prove that conditions of
> confinement are constitutionally inadequate. Nor can
> the incidence of diseases or infections, standing
> alone, imply unconstitutional confinement conditions,
> since any densely populated residence may be subject
> to outbreaks. Allegations of insufficient funding are
> similarly unavailing.

Shepherd v. Dallas Cnty., 591 F.3d 445, 454 (5th Cir. 2009).
"Proving a pattern is a heavy burden, one that has rarely been
met in our caselaw." Id. at 452.

In an "episodic act or omission claim," the plaintiff
complains of a specific act or omission by a state actor. Scott,
114 F.3d at 53. For deliberate indifference to rise to the level
of a constitutional violation, the plaintiff must establish that
the defendant knew of and disregarded an excessive risk to the
plaintiff's health or safety. Farmer v. Brennan, 511 U.S. 825,

837 (1994). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. A defendant's "failure to alleviate a significant risk that he should have perceived but did not" does not constitute a constitutional violation. Id. at 838. "[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." Thompson, 245 F.3d at 459. Rather, the plaintiff must show that the defendant acted with subjective deliberate indifference. Hare v. City of Corinth, 74 F.3d 633, 648-49 (5th Cir. 1996)(discussing Farmer). Deliberate indifference is an extremely high standard to meet. Domino v. Tex. Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001).

IV.

### Undisputed Facts

County, Coates, and Griffin set forth twenty-one pages of facts supported by record references. Doc. 57 at 2-23. Plaintiff disputes very few of them. Doc. 75 at 16-18. And, as discussed, infra, many of the alleged disputes are not relevant. Except for an alleged inaccuracy regarding when Ruggles worked and when plaintiff was booked into the jail, plaintiff does not specifically address the summary judgment evidence submitted by

14

Ruggles. Doc. 78 at 21.

As is its custom, the court is giving the summary judgment evidence whatever weight, if any, it deserves. In particular, the court is not giving much weight to the affidavit submitted by plaintiff inasmuch as it contradicts without explanation much of his sworn deposition testimony, beginning in the first substantive paragraph with the statement that he was on his way home from work when he was stopped for racing.[5] Doc. 76 at 166; id. at 312-13 (after work, plaintiff went to the grocery store and then to his house and had dinner). He states that he was not provided any assistive devices in his cell, id. at 166, whereas he testified that maybe he was in a wheelchair and he just could not remember using one. Doc. 58 at 34. He states that no one would tell him anything or give him any information, Doc. 76 at 166, whereas he testified that he was told more than once that he would hurt himself with the crutches. Doc. 58 at 54-55. He refers to a time "[a]fter they quit giving me painkillers," Doc. 76 at 166, whereas it is clear from his deposition testimony that he considered tylenol a painkiller and that it was provided to him. Doc. 58 at 51-53.

Pertinent to the motions, the record establishes:

---

[5] A video from the scene of the arrest reflects that plaintiff had been drinking. Doc. 58 at 356. In one of the videos submitted by plaintiff, he admits that he had been drinking and is obviously drunk, but that video pertains to another arrest for public intoxication, on May 31, 2019, and not the incident in question. Doc. 76 at Appx 9.

Coates serves as the County's jail policymaker. The policies he enacts are strictly governed by the Texas Commission on Jail Standards ("TCJS"). Coates exercises supervision and control over the jail. He appointed Griffin to supervise the jail's operations. Doc. 58 at 78-79. Coates and Griffin are in constant contact regarding daily jail operations, including medical care provided to inmates. Id. at 83-85, 133-34. Coates has been commended by TCJS for excellent work. Id. at 330.

At the time plaintiff was incarcerated, medical services to inmates were provided by SHP, through a contract with County. Id. at 314-29. Ruggles, a registered nurse, was employed by SHP to work at the jail 30 hours per week. Id. 232, 234. Ruggles was supervised by Laurie Srubar, FNP. Id. at 235; Doc. 60 at 1-2. The County health services plan provided that a nurse would be available five days per week and that emergency care would always be available. Inmates would have access to prescription and nonprescription medications; medical instructions would be followed as written; inmates' medical records would be maintained. Outside medical appointments would not be kept because of the high risk of a security breach if the inmate and his family were aware of the arrangements. Doc. 58 at 309-13. Jailers who violated the plan were subject to discipline. Id. at 120. Jailers were not allowed to ignore medical needs and were

16

required to secure treatment whenever needed, regardless of the circumstance. Jailers were required to monitor inmates to ensure their safety. Id. at 91-93, 104, 134-35. Griffin ensured that the health plan was followed and that staff met medical needs of inmates. Id. at 96.

Griffin never let Coates know that there was any problem or shortcomings with SHP. Id. at 87. Coates and Griffin never had a complaint about Ruggles or about medical care. Coates had no reason to believe that plaintiff's medical needs were being ignored because there were not any other complaints about medical care at the jail. Id. at 97, 135.

Late on January 29, 2018, movant was stopped by a Texas Department of Public Safety officer for street racing with another vehicle. Id. at 288. The officer performed a leg sweep, which resulted in plaintiff's left leg being broken at his ankle. Id. at 266. A County officer responding to the call summoned an ambulance when he heard plaintiff say his leg was broken. Id. at 356. When the ambulance arrived, plaintiff refused treatment, yelling obscenities and homophobic and racial epithets and being unusually belligerent. Id. at 215, 356. Because plaintiff refused medical care, the County officer transported him to the County jail. Id. at 210. Pursuant to County policy, Griffin, who was on duty that night, refused to

17

allow plaintiff to be booked without first being examined at the
hospital. Id. at 163. The officer took plaintiff to the
hospital, where he was immediately seen and treated. Id. at 23,
210-11. A splint was placed on his left leg. Id. at 60; Doc. 76
at Appx 10. The doctor who saw him provided the officer with an
"Inmate Clearance Report" that advised plaintiff should "Keep
[left] ankle/foot elevated as much as possible. Use crutches &
no weight bearing on [left] leg when up. Ice pack to ankle 20
minutes every 2 hrs for 48 hrs. Tramadol 100 mg every 6 [hours]
as needed for pain." Doc. 58 at 266. The officer also received a
summary that gave instructions to call Dr. Kevin Vanden Berge to
arrange follow up and then probably surgery the following week
when swelling was better. The diagnosis was a broken ankle and
the summary specifically described the injury and how to treat
it. The instructions directed to take tylenol, advil, or
tramadol for pain. The directions for applying ice to the
injured area said to leave the ice on for 20 minutes, 2-3 times
a day. The hospital provided the officer with six tramadol
capsules to give plaintiff. Id. at 26, 266-76, 337.

Plaintiff was transported to the jail where he used
crutches to get from the vehicle to the booking area. Id. at 27-
28. The transporting officer gave Griffin the report and
summary. Id. at 165, 167. Plaintiff used crutches to get to the

holding cell where he recalled being housed for two days. Id. at
32. The cell contained steel benches approximately twenty-four
inches off the floor, a toilet, and a sink. Plaintiff was issued
a mat to be used as a mattress. Id. at 30-31. Although the
crutches were taken from him, plaintiff never asked for them
while in this cell. Id. at 32-33. He does not recall having a
wheelchair in the cell, but Griffin saw him sitting in one. Id.
at 34, 168-69. He also had an extra mattress to prop up his
foot. Id. at 168. He was given the tramadol he received at the
hospital and jailers brought him ice. Id. at 34-39. He could not
testify as to how many times he was brought ice. Id. at 34.
Griffin instructed jailers to take plaintiff ice whenever he
asked for it. Id. at 170-72.

Plaintiff recalls being moved to a medical cell that
measured approximately twelve feet by six or eight feet. Id. at
41. He was given the crutches to move to the new cell. Id. at
43. Plaintiff also received ice and the remaining tramadol that
had been given to him in the hospital in the new cell. Id. at
38-39, 46-47. After he received one or two tramadol, he was
given tylenol, but he does not know how often. He asked for pain
medicine four or five times a day and received it once or twice
a day, two pills at a time. He does not know the strength. Id.
at 51-53. He does not recall how many times he was given ice.

19

*Id.* at 46-47. He did not move around much in that cell and does not remember going to the restroom. *Id.* at 42. He communicated with jailers through an intercom speaker that he could reach from where he was lying. The majority of the time jailers answered the intercom. He could press the button as many times as he wanted. *Id.* 44-45. Plaintiff did not have his crutches in this second cell. *Id.* at 187-88. He was told that he might hurt himself. *Id.* at 54-55. He never asked for any other medical care or filed any grievances while in the jail. *Id.* at 56. Griffin never refused to provide plaintiff medicine, medical care, or medical treatment. *Id.* at 70. Coates never refused to give plaintiff medicine. *Id.* Coates visited plaintiff only once and they discussed who was liable to pay for the surgery.[6] *Id.* at 50. Although Ruggles did not see plaintiff, because he refused to come and see her, she knew from Griffin and other jailers that he was being provided ice, crutches, a wheelchair, and tylenol. *Id.* at 175; Doc. 60 at 2.

Coates and Griffin tried to follow the doctor's orders. Griffin instructed jailers to provide plaintiff all six of the tramadol tablets from the hospital. Doc. 58 at 100-01, 121-22, 167-68. Griffin called Vanden Burge's office on January 31, the

---

[6] Plaintiff was told by his doctor's office that County was liable. Coates took the position that County was not liable since it was not responsible for the broken leg. In any event, plaintiff would have had the surgery had he remained in custody. Doc. 58 at 111, 117-19, 185.

day after plaintiff's arrival at the jail, to make an
appointment for follow-up. Id. at 175-76, 181. On February 2,
2018, plaintiff was taken to the appointment. Id. at 57. Notes
of the appointment do not reflect that plaintiff complained that
he was in excruciating pain or being denied pain medication.
Rather, plaintiff said that he was not currently taking
medication for pain because he was out. Id. at 346. The doctor
sent a tramadol prescription to the pharmacy after discussing
the risks and benefits of opioid and/or other controlled
substances. Id. at 347. The pharmacy delivered the tramadol to
the jail, where it was placed with plaintiff's property. Id. at
164. When Ruggles told Griffin that Srugar would not approve
additional tramadol and told Ruggles to give plaintiff tylenol,
Griffin made sure tylenol was provided. Id. at 175, 177, 179,
306. Griffin checked on plaintiff almost every day and had
jailers check on him every fifteen minutes, which they did. Id.
at 163, 277-84.

    The doctor scheduled surgery for February 7. Id. at 56-57,
62, 196. Pursuant to jail policy, Griffin rescheduled the
surgery for February 9, the next available time. Id. at 183-84,
195. Coates believed that plaintiff would be more comfortable at
home recovering from the surgery. Id. 113, 118, 127. Griffin

made arrangements for plaintiff to be bonded out of jail.[7] Id. at
186-87. He was released the day before the surgery. Id. at 307.
Griffin returned the unused tramadol to plaintiff's mother.[8] Id.
at 164, 196. There is no evidence that the two day delay in
surgery affected the outcome.

V.

Analysis

As for the conditions of confinement claim, defendants have
established that facts do not exist to support such a claim. In
response, plaintiff fails to point to any evidence establishing
an official policy, custom, or practice that caused a particular
violation of plaintiff's constitutional rights. He simply
includes in his brief three paragraphs containing conclusory
allegations to the effect that evaluation, monitoring, and
treatment of inmates with serious medical illness was grossly
inadequate due to poor or non-existent procedures and
understaffing. Doc. 75 at 19-20. Plaintiff does not point to any
examples of illness, injury, or death to show that the
conditions of confinement were constitutionally inadequate.
Despite citing to Shepherd v. Dallas Cnty., 591 F.3d 445 (5th

---

[7] Plaintiff had been charged with a felony and a misdemeanor. The felony charge was dropped and plaintiff was able
to bond out on a personal recognizance bond for the misdemeanor.
[8] Plaintiff says only that the tramadol was not returned to him. There is no evidence to support any contention that
Ruggles took the tramadol or used it for her own purposes.

22

Cir. 2009), he relies on no other instances of alleged
deprivation but his own, which clearly does not begin to meet
the test.

Defendants have further shown that there was not any
deliberate indifference to training or supervision. Written
policies, vel non, there were verbal policies in place that
required jailers to get medical assistance for any inmate
needing it at any time. Brumfield v. Hollins, 551 F.3d 322, 332
(5th Cir. 2008). Further, absent a known danger, defendants
cannot have been deliberately indifferent. Id.

Under the heading "Failure to Supervise/Train," plaintiff
includes a mere three paragraphs. Doc. 75 at 20-21. Again, the
cases he cites concern substantially egregious facts that do not
exist here. In Martone v. Livingston, No. 4:13-CV-3369, 2014 WL
3534696 (S.D. Tex. July 16, 2014), prison officials were held
liable for acting with deliberate indifference in creating and
approving dangerous conditions that caused a death by heat
stroke. Two other cases he cites concerned motions to dismiss
and whether the plaintiff had pleaded viable causes of action,
not whether summary judgment evidence established a genuine
issue of fact. In Stephens v. Correctional Servs. Corp., 428 F.
Supp. 2d 580 (E.D. Tex. 2006), plaintiff alleged sufficient
facts to state a claim that jailers placed him, a pretrial

detainee, with violent criminals who threatened his life, ignored his complaints of the danger, and allowed him to be severely beaten, suffering life-threatening injuries. In Spikes v. McVea, No. 17-8164, 2018 WL 2095732 (E.D. La. May 7, 2018), the plaintiff alleged that he suffered with a fractured hip for 43 days before the doctor saw him; the doctor had been the subject of 29 separate complaints by patients, including specific allegations of failure to provide constitutionally adequate medical care; and, if the nurses had been properly overseen, they would have known that plaintiff needed to be examined by a doctor. Plaintiff here makes no attempt to establish a factual basis for the failure to train or supervise claims.

As stated, proof of deliberate indifference normally requires a plaintiff to show a pattern of violations and that the inadequate training or supervision is obvious and obviously likely to result in a constitutional violation of the kind asserted by plaintiff. Here, the evidence (if there is any) of failure to train or supervise is simply too attenuated to permit an inference that County, Coates, or Griffin was deliberately indifferent. Brown v. Callahan, 623 F.3d 249, 255-56 (5th Cir. 2010).

With regard to the liability of Griffin and Ruggles for

24

deliberate indifference to plaintiff's serious medical needs, plaintiff must show that each of them was aware of facts from which an inference of excessive risk to plaintiff's health and safety could be drawn and that each actually drew that inference. Farmer, 511 U.S. at 837. Mere delay in medical care may constitute a constitutional violation but only if there has been deliberate indifference that results in substantial harm. Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006). The injury suffered must be more than de minimis. Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997).

Here, plaintiff admits that Griffin never denied him medical care or medicine. He only sued Ruggles because he believed that she was responsible for his medical care. He cannot point to anything she did or failed to do that caused him specific harm.[9] The record reflects that jailers checked on plaintiff every fifteen minutes. They provided him ice, took him for a consultation with his surgeon, and scheduled surgery for him. Plaintiff disagreed with the medicine he was provided after he had taken all of the tramadol from the emergency room visit, but he did receive medication. He has not pointed to specific evidence to show that there is a genuine fact issue as to

---

[9] Failure to know or follow certain procedure or to document everything as required has no bearing on any injury allegedly suffered by plaintiff, because he has not shown that Ruggles knew that her failure to so comply would cause plaintiff to suffer any injury.

deliberate indifference to a serious medical need.

Finally, the individual defendants have each claimed the right to qualified immunity. Although acknowledging the proper standard, plaintiff makes no attempt to show at more than a high level of generality whether the violative nature of the conduct at issue is clearly established. Morrow v. Meachum, 879 F.3d 870, 875 (5th Cir. 2019). That is, he does not point out any cases establishing a particular right to treatment or care for a broken ankle. Thompson, 245 F.3d at 458 (plaintiff must have case law from this circuit handed down in time to be clearly established at the time of the events being considered). Instead he cites to cases that are inapposite. See Hope v. Pelzer, 536 U.S. 730 (2002) (precedent established that tying plaintiff to a hitching post without a shirt in the sun for 7 hours without water and bathroom breaks while taunting him was a violation of the Eighth Amendment); Domino, 239 F.3d 752 (reversing denial of summary judgment for a prison psychiatrist who did not foresee an inmate's suicide).

Even assuming that simply citing to Estelle is sufficient to establish the standard, deliberate indifference is an extremely high standard to meet, as plaintiff should know. Doc. 78 at 18 (citing Watkins v. Monroe, No. 6:18-CV-347, 2020 WL 1282504, at *4 (E.D. Tex. Feb. 26, 2020)). Yet, plaintiff has

not shown that any of the defendants actually knew of and disregarded any excessive risk of serious bodily harm to him.[10] Garza v. City of Donna, 922 F.3d 626, 635 (5th Cir. 2019).[11] Deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm.[12] Thompson, 245 F.3d at 459.

In sum, although the summary judgment evidence shows that none of the individual defendants could list all of plaintiff's constitutional rights or recite chapter and verse of jail standards or the contract between County and SHP, and that their record-keeping may not have been the best,[13] all of them knew that plaintiff was being cared for. He was being checked every fifteen minutes; an appointment was made and kept for his follow-up visit to the surgeon; he was given ice and medication; he could call for assistance whenever he needed it; his surgery was scheduled and he was released from custody so that he could

---

[10] For example, although Ruggles knew generally what complications might result from an unstable fracture, there is no evidence that she knew of any specific risk faced by plaintiff (who had been treated in the emergency room and placed in a splint) and that she was deliberately indifferent to that risk.

[11] No defendant contends that plaintiff had to establish subjective intent to harm him, yet plaintiff devotes a portion of his briefs to this non-issue. Doc. 75 at 22-23; Doc. 78 at 17-18.

[12] The court questions whether plaintiff has established more than a de minimis injury, but the resolution of that issue does not affect the outcome here, where it is clear that plaintiff received medical care but just did not like the care he received. Ruiz v. Mercado, No. M-14-921, 2016 WL 1166040 (S.D. Tex. Feb. 10, 2016).

[13] There is no evidence to support plaintiff's apparent contention that if something was not documented, it did not happen. For example, no records have been produced to show that plaintiff was supplied a wheelchair in his first cell or a walker with a seat (or shower chair) in his second cell, but Griffin testified that she saw that he had each. (Even if he did not, the failure to provide them does not amount to a constitutional violation. See, e.g., Brown v. Adams, 267 F. App'x 377 (5th Cir. 2008); Roberts v. La. Dep't of Corr., 163 F.3d 1357 (5th Cir. 1988).

recuperate at home. Plaintiff has not raised a genuine fact issue for trial as to any of his claims.

VI.

Order

The court ORDERS that defendants' motions for summary judgment be, and are hereby, granted; that plaintiff take nothing on his claims against defendants; and that such claims be, and are hereby, dismissed with prejudice.

SIGNED November 23, 2020.

_____

JOHN MCBRYDE
United States District Judge

28